**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JANE DOE,

        Plaintiff,

       v-                                    5:23-CV-1452 (AJB/ML)

SIGMA CHI INTERNATIONAL FRATERNITY,
INC., *et al.*,

        Defendants.

**Hon. Anthony Brindisi, U.S. District Judge:**

## DECISION and ORDER

## I.    INTRODUCTION

Plaintiff Jane Doe[1] was a student at Syracuse University in the early 1990s.  In 1991, during her freshman year, she was allegedly sexually assaulted at a fraternity house on campus. Dkt. No. 1. ¶¶ 10–11.

On November 17, 2023, more than three decades after the alleged assault, plaintiff filed this action pursuant to the New York State's Adult Survivors Act (the "ASA").  Dkt. No. 1.  The ASA established a one-year period, from November 24, 2022, to November 24, 2023, during which adult survivors of sexual assault could bring civil suits against their abusers and any institutions that contributed to the abuse, even if the statute of limitations had run.  N.Y. C.P.L.R. § 214-j.

The matter was originally assigned to Chief U.S. District Judge Brenda K. Sannes.

---

[1] Plaintiff is proceeding by pseudonym pursuant to a stipulated protective order.  Dkt. No. 64.

Plaintiff's initial complaint asserted claims against her alleged abuser, identified only as "John Roe," and several institutional defendants. Dkt. No 1. Days later, plaintiff amended her complaint to identify her alleged abuser by name. Dkt. No. 5.

Put broadly, the first amended complaint alleged that plaintiff, then a freshman at Syracuse University, attended a sorority event hosted at a fraternity house where she was sexually assaulted by a member of the fraternity after consuming excessive amounts of alcohol supplied by fraternity and sorority members. Dkt. No. 5 ¶¶ 6–11.

Plaintiff brought claims for negligence, negligent breach of assumed duties, negligence *per se*, and willful and wanton misconduct against Sigma Chi International Fraternity, Inc. ("Sigma Chi"), Sigma Chi Foundation (the "Foundation"), 737 Comstock Avenue, Inc. ("Comstock"), the Psi Psi Chapter of Sigma Chi ("Psi Psi"), and Luke Rogers ("Rogers") and Ethan Hirsh ("Hirsh"), in their respective capacities as president and treasurer of Psi Psi (collectively, the "Fraternity defendants").

Plaintiff brought similar claims against sorority Delta Delta Delta ("Tri Delta"), the Omicron Chapter of Tri Delta ("Omicron"), and Claire Harris ("Harris") as president of Omicron (collectively, the "Sorority defendants"), as well as Syracuse University (the "University"). She also asserted claims against her alleged attacker, Michael Montalto ("Montalto"), for sexual assault, battery, and intentional infliction of extreme emotional distress.

On January 29, 2024, the Fraternity defendants, the Sorority defendants, and the University moved to dismiss plaintiff's amended complaint. Dkt. Nos. 55–56, 58. After briefing, Chief Judge Sannes dismissed Hirsh and conditionally dismissed (1) plaintiff's claims against the Foundation, all of which were premised on a theory of alter ego liability; (2) plaintiff's claims against Comstock premised on alter ego liability, which were all but her

premises liability and negligence *per se* claims; (3) plaintiff's negligent misrepresentation claim

against the University; and (4) plaintiff's negligence claim against the University for failing to

offer, provide, or identify services to plaintiff after she reported the alleged rape.  Dkt. No. 73.

As relevant here, Chief Judge Sannes granted plaintiff partial leave to amend with respect to

these dismissed claims, noting that "the Complaint's deficiencies may be fixed with better

pleading."  *Id.* at 57–58.

On October 30, 2024, plaintiff filed a second amended complaint,[2] adding new

allegations primarily in support of her conditionally dismissed claims against the Fraternity

defendants.  Dkt. No. 77 ("Second Am. Compl").

The second amended complaint alleges negligence, negligent breach of assumed duties,

hazing/negligence *per se*, and willful and wanton misconduct against the Fraternity Defendants

("Count I"), *see* Second Am. Compl. ¶¶ 148–161; negligence, negligent breach of assumed

duties, negligent misrepresentation, hazing/negligence *per se*, and willful and wanton

misconduct against the Sorority defendants ("Count II"), *id.* ¶¶ 162–181; negligence against the

University ("Count III"), *id.* ¶¶ 182–192; and sexual assault, battery, and infliction of extreme

emotional distress against Montalto ("Count IV"), *id.* ¶¶ 193–198.

On November 13, 2024, the Fraternity defendants moved to dismiss pursuant to Federal

Rule of Civil Procedure ("Rule") 12(b)(6), arguing that (1) the second amended complaint

violates the pleading requirements set forth in Rules 8 and 10; (2) plaintiff has not plausibly

alleged that the Foundation and Comstock are "alter egos" of Sigma Chi; (3) "willful and wanton

misconduct" is not a cognizable claim under New York law; and (4) to the extent plaintiff alleges

---

[2] The second amended complaint is sequentially numbered by line.  Accordingly, citations to the pleading correspond with that document's internal pagination.

willful and wanton misconduct to permit an award of punitive damages against the Fraternity defendants, those allegations are insufficient.  Dkt. No. 78-1 ("Defs.' Mem.").[3]

On June 13, 2025, after the Fraternity defendants' motion was fully briefed, *see* Dkt. Nos. 101 & 103, the matter was reassigned to this Court for all further proceedings, Dkt. No. 110. The Fraternity defendants' motion to dismiss will be considered on the basis of the submissions without oral argument.

## II.    BACKGROUND

The following facts are taken from the second amended complaint and will be assumed true for the purpose of assessing the Fraternity defendants' motion.  Notably, because only the Fraternity defendants moved to dismiss the second amended complaint, the Court limits its recitation of the factual background to the allegations relevant to those defendants.[4]

### A.  Parties

The Court begins with a brief overview of the parties, whose identities and relationships are integral to plaintiff's claims.

### 1.  Plaintiff

Plaintiff is a resident of the State of Washington.  Second Am. Compl. ¶ 18.  At the time of the alleged sexual assault, she was a freshman at Syracuse University.  *Id.* ¶ 1.

### 2.  The Fraternity Defendants

Sigma Chi, an international fraternity, is a non-profit corporation organized and existing under the laws of the State of Indiana.  Second Am. Compl. ¶ 19.  Sigma Chi was formed in

---

[3] Pagination to the briefing corresponds to the electronically generated CM/ECF headers.

[4] Plaintiff's allegations against the remaining defendants are virtually unchanged from her first amended complaint. A detailed discussion of those factual allegations is available in Chief Judge Sannes's prior opinion.  Dkt. No. 73.

1855 and has "approximately 244 active chapters and 152 alumni chapters operating on college campuses throughout the United States and Canada." *Id.*

Sigma Chi "is vested with the powers" to, *inter alia*, establish and suspend chapters; govern chapter operations; prescribe membership fees and qualifications; discipline members; and determine chapter leadership roles and responsibilities. Second Am. Compl. ¶ 98. Sigma Chi is also authorized to create "entities (house corporations)," acquire "real property ([chapter] houses)," install property committees to manage chapter houses, "hold first and second mortgages on chapter houses," and "determine the use and ultimate disposition of" chapter houses. *Id.* ¶ 102.

Psi Psi is the chapter of Sigma Chi operating at Syracuse University. Second Am. Compl. ¶ 20. Psi Psi is allegedly controlled by Sigma Chi and "serves as one of many chapters from which Sigma Chi generates its principal revenue by recruiting members from college campuses." *Id.*

Rogers, who was president of Psi Psi when plaintiff filed this action, is sued only in his capacity as president and on behalf of Psi Psi, an unincorporated association, in accordance with New York General Associations Law § 13. Second Am. Compl. ¶ 20.

The Foundation is a non-profit corporation organized and existing under the laws of the State of Colorado. Second Am. Compl. ¶ 21. Among other functions:

> The Foundation accepts and holds tax-deductible contributions and substantial assets used to fund, support, and expand the activities and operations of Defendant Sigma Chi and its chapters, including awarding grants to students, funding risk-management and educational services, and reimbursing and/or subsidizing the wages and salaries of directors and officers of Sigma Chi.

*Id.*

The Foundation was created with the sole purpose of securing financial resources and providing faithful stewardship in support of Sigma Chi. Second Am. Compl. ¶ 21. Both Sigma

Chi and the Foundation are headquartered at 1714 Hinman Avenue in Evanston, Illinois. *Id.* ¶¶ 19, 21. "Sigma Chi and [the] Foundation regularly have overlapping officers, directors, and/or key employees, with at least nine individuals having served as officers, directors, or key employees of both Sigma Chi and the Foundation since 2000." *Id.* ¶ 21. "At least two of those individuals served simultaneously as officers or directors of both entities for at least a year." *Id.* At least three of those individuals immediately transitioned from Sigma Chi to the Foundation. *Id.* The current treasurer of the Foundation's board of governors previously served as the executive director of Sigma Chi for nearly two decades. *Id.* Since 2000, at least $26.2 million has been transferred between Sigma Chi and the Foundation. *Id.*

Both Sigma Chi and the Foundation allegedly hold an ownership interest in the Risk Management Foundation ("RMF"). Second Am. Compl. ¶ 116. RMF is a non-profit corporation formed by Sigma Chi in 1988 to serve as a "captive insurance company." *Id.* ¶¶ 116–17. RMF allegedly negotiates and provides insurance for fraternity entities "that includes coverage exclusions applicable solely to chapters and members, including, without limitation, related to the misuse of alcohol, hazing, sexual misconduct, and violations of university and fraternity risk-management policies." *Id.* ¶ 124. RMF shares a headquarters with Sigma Chi and the Foundation, and, since 2000, there have been at least four overlapping officers or directors between Sigma Chi, the Foundation, and RMF. *Id.* ¶ 120. At least $12.8 million in funds have been transferred from RMF to Sigma Chi and the Foundation since 2008. *Id.* ¶ 123.

Lastly, Comstock is a non-profit corporation managed by alumni of Psi Psi and organized under the laws of the State of New York. Second Am. Compl. ¶ 22. Comstock holds title to the real estate used exclusively by members of Psi Psi, including Psi Psi's fraternity house located at

737 Comstock Avenue in Syracuse, New York (the "Chapter House"). *Id.* Through lease agreements with members, the Chapter House generates revenue for Sigma Chi. *Id.*

Comstock manages the Chapter House subject to certain provisions of the Constitution of the Sigma Chi Fraternity. Second Am. Compl. ¶ 105. "The chapter house . . . has housed members of Sigma Chi and its Psi Psi Chapter for decades, resulting in substantial revenues for . . . Sigma Chi." *Id.* ¶ 106.

"For decades, at the direction of . . . Sigma Chi, [the] Foundation has provided financing to . . . Comstock as an additional means for [the] Foundation and . . . Sigma Chi to exercise control over, and profit from . . . [the] [C]hapter [H]ouse." Second Am. Compl. ¶ 107. "For example, in or around January 1984, Defendant Foundation issued Defendant Comstock a mortgage, with the chapter house as security." *Id.* ¶ 108.

"In conjunction with that loan . . . Comstock executed a Declaration of Trust [obligating] . . . Comstock to 'hold, operate and manage' the chapter house 'for the protection and best interests of the active and alumni members of Psi Psi chapter and for the best interests of the Sigma Chi Fraternity" so long as Psi Psi "'remains an active Chapter in good standing of Sigma Chi Fraternity.'" Second Am. Compl. ¶ 109.

The Declaration of Trust mandated that all lease agreements between Comstock and members of Psi Psi "'expressly provide for immediate termination in the event said Psi Psi Chapter ceases to be an active chapter in good standing.'" Second Am. Compl. ¶ 110. At all relevant times, Sigma Chi "had the absolute authority and ability to deem and declare Psi Psi to be a chapter no longer in good standing." *Id.* ¶ 113. "In the event of such a termination," Comstock was required to "manage the chapter house in accordance with directions given by any

- 7 -

two members" of a three-member property committee comprised of at least two members or officers of Sigma Chi.  *Id.* ¶¶ 111–13.

### B.  The Alleged Sexual Assault

In August 1991, plaintiff, then 18 years old, arrived at Syracuse University to begin her freshman year.  Second Am. Compl. ¶ 68.  Shortly thereafter, she decided to join Tri Delta, a sorority on campus.  *Id.* ¶ 9.

On September 19, 1991, Tri Delta partnered with Sigma Chi to co-sponsor "a recruitment and bid event at the Fraternity Defendants' chapter house on the University's campus," to celebrate the prospective new members, or "pledges."  Second Am. Compl. ¶ 10.  At the event, plaintiff and other underage attendees were directed to drink excessive amounts of champagne, alcoholic punch made with 190 proof grain alcohol, and a "special punch," which had been secretly spiked with illicit drugs.  *Id.*  Certain members of Sigma Chi and Tri Delta were tasked with encouraging the underage pledges to consume the alcohol.  *Id.*

Plaintiff drank excessive amounts of alcohol at the direction of the fraternity and sorority members and became heavily intoxicated.  Second Am. Compl. ¶ 11.  She went upstairs with Sigma Chi member Montalto, who allegedly kissed her and made unwanted sexual advances towards her.  *Id.*  Plaintiff told Montalto that she did not want to engage in any sexual acts with him and informed him that she had a boyfriend.  *Id.*  Montalto continued his advances, to which plaintiff responded "[n]o, don't do that."  *Id.*  Over plaintiff's objections, Montalto allegedly proceeded to rape plaintiff, who was unable to get away in her intoxicated state.  *Id.*  During the assault, another member of Sigma Chi entered the room but did not intervene.  *Id.*  Plaintiff eventually got away from Montalto and climbed down the Chapter House's fire escape.  *Id.*

"The next day she went to the University's Health Clinic, which through an exam confirmed sexual penetration."  Second Am. Compl. ¶ 11.  Plaintiff reported the alleged rape to

members of Tri Delta, "filed a report with the local police[,] and went to the local hospital for a rape examination." *Id.* ¶ 12.

Days later and without her permission, plaintiff's "allegations of sexual assault were reported on the front page of the campus newspaper." Second Am. Compl. ¶ 13. Consequently, members of Tri Delta allegedly harassed and retaliated against plaintiff, leading her to withdraw from the sorority and, eventually, the University. *Id.* ¶¶ 13–14.

## III.    LEGAL STANDARDS

A party may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) ("[T]he '[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).

To assess this facial plausibility requirement, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in favor of the plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In doing so, the court generally confines itself to the facts alleged in the pleading, documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV.    DISCUSSION

As a threshold matter, plaintiff contends that the Fraternity defendants have waived any objections to the second amended complaint based on violations of Federal Rules of Civil Procedure 8 and 10 or the sufficiency of plaintiff's allegations of willful and wanton misconduct. Dkt. No. 101 ("Pl.'s Opp.") at 13–15.  According to plaintiff, those objections could have been raised in their earlier motion to dismiss and their failure to do so precludes defendants from raising them now.  Pl.'s Opp. at 14–15.

The Court addresses plaintiff's waiver argument first, because, if correct, the Court need not reach the merits of those portions of the Fraternity defendants' motion.

## A.  Waiver

Plaintiff argues that "[t]he Fraternity [d]efendants' second motion to dismiss" improperly raises "for the first time[,] arguments regarding purportedly improper group pleading and willful and wanton misconduct that they could have raised in their first motion to dismiss."  Pl.'s Opp. at 14.  Plaintiff relies on Rule 12(g)(2) in support of this proposition.  *Id.* at 13.

The Fraternity defendants disagree, insisting that they have not waived any objections to the second amended complaint, as it superseded and nullified all earlier pleadings.  Dkt. No. 103 ("Defs.' Reply") at 5.  Defendants also emphasize that resolving their motion on the merits, rather than on technical grounds, "conserves judicial resources and allows for a more efficient resolution of the ultimate controversy at issue."  *Id.*

"Rule 12(g)(2) states that 'a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.'"  *Fasano v. Li*, 47 F.4th 91, 105 (2d Cir. 2022) (quoting FED. R. CIV. P. 12(g)(2)).  "[T]he Rule 12 defenses that are waived by a failure to assert them early are only those 'listed in Rule 12(b)(2)–(5).'"  *Fasano*, 47 F.4th at 105 (quoting FED. R. CIV. P. 12(h)(1)).  "Rule 12 itself provides that a Rule 12(b)(6) defense of '[f]ailure to state a claim upon

which relief can be granted . . . may be raised . . . at trial.'" *Fasano*, 47 F.4th at 105 (citing FED. R. CIV. P. 12(h)(2)(C)).

"In sum . . . while procedural defenses are waived if omitted from a pleading or pre-answer motion, a defendant cannot waive the more fundamental 12(b)(6) defense—that the plaintiff has no legal right to recovery in the first place." *United States ex rel. Kolchinsky v. Moody's Corp.*, 238 F. Supp. 3d 550, 555 (S.D.N.Y. 2017) (citing *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)).

The Fraternity defendants have moved to dismiss plaintiff's second amended complaint pursuant to Rule 12(b)(6). Defs.' Mem. at 14–15. Because a defendant cannot waive 12(b)(6) arguments, they have not waived their arguments regarding the sufficiency of plaintiff's allegations.[5]

Accordingly, the Court will address the merits of all arguments raised in the Fraternity defendants' motion.

## B. The Fraternity Defendants' motion

The Fraternity defendants have moved to dismiss the second amended complaint, arguing that (1) it violates the pleading requirements set forth in Federal Rules of Civil Procedure 8 and 10; (2) plaintiff has not plausibly alleged that the Foundation and Comstock are alter egos of Sigma Chi; (3) willful and wanton misconduct is not a cognizable claim under New York law;

---

[5] Further and contrary to plaintiff's contentions, the Fraternity defendants could not have raised their current objections to plaintiff's second amended complaint in their earlier motion. On January 29, 2024, Fraternity defendants moved to dismiss plaintiff's initial complaint. Dkt. No. 56. The Court granted the motion in part, conditionally dismissing several of plaintiff's claims against the Fraternity defendants. Dkt. No. 73. Plaintiff subsequently amended her complaint, adding new allegations against the Fraternity defendants. Dkt. No. 77. When the Fraternity defendants filed their first motion to dismiss, these new allegations were obviously not yet available to them. *See Fasano*, 47 F.4th at 105 ("A motion to dismiss the [second] amended complaint obviously was not 'available' to [d]efendants" at the time they made their first motion.).

and (4) to the extent plaintiff alleges willful and wanton misconduct to permit punitive damages against the Fraternity defendants, her allegations are insufficient. *See* Defs.' Mem.

In response, Plaintiff contends that (1) her "well-pled and detailed" allegations satisfy the civil pleading requirements; (2) the Foundation, Comstock, and Sigma Chi are alter egos; (3) her allegations of willful and wanton misconduct are not asserted as a standalone cause of action, but rather to permit punitive damages against the Fraternity defendants; and, to that end, (4) plaintiff plausibly alleged that the Fraternity defendants engaged in willful and wanton misconduct. *See* Pl.'s Opp.

As discussed *infra*, the second amended complaint is not a model of clarity. However, plaintiff provided a chart of her "active claims against the Fraternity defendants" in her opposition papers:

| **Fraternity Defendant** | **Plaintiff's Active Claims against Fraternity Defendant** |
| --- | --- |
| 1. Sigma Chi International Fraternity, Inc. | • Negligent breach of assumed duty claim<br>• Negligence *per se* claim<br>• Negligence based on vicarious liability<br>• Alter ego liability (as an alter ego of Psi Psi Chapter)<br>• Alter ego liability (as an alter ego of the Foundation and Comstock) (*pending the Court's ruling on the Fraternity Defendants' second motion to dismiss*) |
| 2. Psi Psi Chapter of Sigma Chi Fraternity at Syracuse University | • Premises liability claim<br>• Negligent breach of assumed duty claim<br>• Negligence *per se* claim<br>• Alter ego liability (as an alter ego of Sigma Chi) |
| 3. 737 Comstock Avenue, Inc. | • Premises liability claim<br>• Negligence *per se* claim<br>• Alter ego liability (as an alter ego of Sigma Chi) (*pending the Court's ruling on the Fraternity Defendants' second motion to dismiss*) |
| 4. Sigma Chi Foundation | • Alter ego liability (as an alter ego of Sigma Chi) (*pending the Court's ruling on the Fraternity Defendants' second motion to dismiss*) |

Pl.'s Opp. at 17–18.

The Court finds this interpretive aid consistent with, and representative of, the allegations in the second amended complaint.[6]  Accordingly, the Court takes plaintiff's construction of her remaining claims into account in assessing the merits of the Fraternity defendants' motion.

### 1.  Group Pleading

First, the Court addresses arguments related to Rules 8 and 10 of the Federal Rules of Civil Procedure because the Fraternity defendants seek dismissal of all claims on these grounds. Defs. Mem. at 13–14.  According to the Fraternity defendants, the second amended complaint employs "improper group pleading" in violation of the Federal Rules of Civil Procedure.  *Id*. at 11.

Plaintiff maintains that her allegations satisfy the pleading requirements imposed by the Federal Rules of Civil Procedure.  Pl.'s Opp. at 13–14.

### a.  Rule 8(a)(2)

The Fraternity defendants argue that plaintiff's allegations do not put each Fraternity defendant on fair notice of the claims against them, making "it impossible for the Fraternity Defendants to answer properly."  Defs.' Mem. at 13.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

---

[6] The Court notes that the Fraternity defendants have moved to dismiss plaintiff's "Negligence Claim Based on Premises Liability" against the Foundation and Sigma Chi.  Defs.' Mem. at 15–16.  However, as defendants point out, *id.* at 6, these claims were previously dismissed in Chief Judge Sannes' earlier decision.  Dkt. No. 73 at 25 n. 8.

Based on plaintiff's representation of her surviving claims, she is not attempting to re-plead her premises liability claims against the Foundation or Sigma Chi in the second amended complaint.  To the extent these claims *are* re-alleged in the second amended complaint, they are, again, dismissed for the reasons stated in Chief Judge Sannes' earlier decision.  *See* Dkt. No. 73 at 25 n. 8.

what the . . . claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 545 (quoting

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court may properly dismiss a complaint for failure to comply with Rule 8(a)(2)

either upon motion or *sua sponte*.  *See Dyson v. N.Y. Health Care, Inc.*, 353 F. App'x 502, 503

(2d Cir. 2009) (summary order) (holding "the district court did not abuse its discretion by

dismissing [plaintiff]'s third amended complaint with prejudice" where "the district court

afforded [plaintiff] three opportunities to file an amended complaint so as to comply with Rule

8(a)(2)"); *Preacely v. City of N.Y./N.Y. Police Dep't*, 531 F. App'x 173 (2d Cir. 2013) (summary

order) (affirming district court's *sua sponte* dismissal of complaint for persistent noncompliance

with Rule 8(a)(2)); *Cisse v. Annucci*, 2022 WL 1183274, at *2 (N.D.N.Y. Apr. 21, 2022) (noting

that courts have "discretionary authority to dismiss plaintiff's complaint for failing to comply

with Rules 8 and 10 of the Federal Rules of Civil Procedure").

The Fraternity defendants have expressed understandable confusion about the precise

contours of plaintiff's negligence claims.  Defs.' Mem. at 13–14.  In some respects, the second

amended complaint can be characterized as a "shotgun pleading," or, in other words, "a

document that makes it 'virtually impossible to know which allegations of fact are intended to

support which claim(s) for relief.'"  *Alexander v. City of Syracuse*, 2018 WL 6591426, at *3

(N.D.N.Y. Dec. 13, 2018) (quoting *Croons v. N.Y. State Office of Mental Health*, 18 F. Supp. 3d

193, 199 (N.D.N.Y. 2014)).

The second amended complaint encompasses 198 numbered paragraphs.  *See generally,*

Second Am. Compl.  Count I, which does not begin until Paragraph 148, is identified as

"Negligence, Negligent Breach of Assumed Duties, Hazing / Negligence *Per Se*, Willful and

Wanton Misconduct" against "Fraternity Defendants."  Second Am. Compl. at 43.  Plaintiff's

first allegation under Count I reads, "[a]ll of the preceding allegations in this Complaint are re-alleged and incorporated by reference as if fully set forth herein." *Id.* ¶ 148. Nearly every subsequent paragraph of Count I begins with "The Fraternity Defendants, individually, and through their respective agents and alter egos . . . " *Id.* ¶¶ 149–154, 158–59, 161.

Based on this configuration, Count I appears to assert four different causes of action—negligence, negligent breach of assumed duties, negligence *per se*, and willful and wanton misconduct—against each of the Fraternity defendants.

However, the ensuing paragraphs make this less clear. As defendants point out, "paragraph 159 of the [second amended complaint] . . . makes a litany of allegations as to how the Fraternity Defendants were supposedly negligent, but many of these allegations cannot plausibly be made against each of the Fraternity Defendants." Defs.' Mem. at 13. For instance, "in paragraph 159(i), Plaintiff alleges the 'Fraternity Defendants' hired and provided consultants to counsel and evaluate chapters' understanding of and compliance with risk management policies; however, it is not alleged . . . that the Local Chapter and 737 Comstock could and did hire consultants to work with various *other* Sigma Chi chapters." *Id.*

Defendants insist that "[r]equiring the Fraternity Defendants to answer allegations that are on their face implausible and unwieldly, such as those in Count I of the [second amended complaint], is prejudicial and mandates dismissal." Defs.' Mem. at 13.

"While this kind of pleading probably requires a smaller investment of time and fewer resources to draft and file, in the longer run it amounts to more work for everyone involved in the litigation." *Alexander*, 2018 WL 6591426, at *3. "It leaves the defendants confused about which one of them has been sued (and for what)." *Id*. Above all, "it wastes judicial resources, since the task of sorting out all this confusion always falls squarely on the Court itself." *Id.*

- 15 -

Further, as particularly relevant here, "[i]t requires the plaintiff to explain in other filings made during the course of the litigation 'what he really meant to say' when he drafted the pleading." *Alexander*, 2018 WL 6591426, at *3.

Indeed, in her opposition, plaintiff does just that:

| **Fraternity Defendant** | **Plaintiff's Active Claims against Fraternity Defendant** |
|---|---|
| 1. Sigma Chi International Fraternity, Inc. | • Negligent breach of assumed duty claim<br>• Negligence *per se* claim<br>• Negligence based on vicarious liability<br>• Alter ego liability (as an alter ego of Psi Psi Chapter)<br>• Alter ego liability (as an alter ego of the Foundation and Comstock) (*pending the Court's ruling on the Fraternity Defendants' second motion to dismiss*) |
| 2. Psi Psi Chapter of Sigma Chi Fraternity at Syracuse University | • Premises liability claim<br>• Negligent breach of assumed duty claim<br>• Negligence *per se* claim<br>• Alter ego liability (as an alter ego of Sigma Chi) |
| 3. 737 Comstock Avenue, Inc. | • Premises liability claim<br>• Negligence *per se* claim<br>• Alter ego liability (as an alter ego of Sigma Chi) (*pending the Court's ruling on the Fraternity Defendants' second motion to dismiss*) |
| 4. Sigma Chi Foundation | • Alter ego liability (as an alter ego of Sigma Chi) (*pending the Court's ruling on the Fraternity Defendants' second motion to dismiss*) |

Pl.'s Opp. at p. 17–18.

While "[o]rdinarily, parties may not amend the pleadings through motion papers," *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 56 (2d Cir. 2018), plaintiff does not raise additional claims or assert new factual allegations in her opposition, *see generally*, Pl.'s Opp.

Further, the Second Circuit has a "jurisprudential preference for adjudication of cases on their merits rather than on the basis of formalities." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

The Court agrees with the Fraternity defendants that the second amended complaint is, at a minimum, inartful. Nevertheless, the second amended complaint satisfies Rule 8(a)(2)'s requirements, as plaintiff's overarching factual narrative sufficiently identifies each Fraternity defendant's individual role in her alleged injury. Second Am. Compl. ¶¶ 19–22, 28–37, 73–74, 83–84, 95–129. Notably, paragraphs 95 through 129 detail the relationships between the Fraternity defendants and the conduct attributable to each. *Id.* ¶¶ 95–129.

Therefore, the Court declines to dismiss the second amended complaint on these grounds.

### b. Rule 10(b)

The Fraternity defendants also argue that the second amended complaint should be dismissed for noncompliance with Rule 10(b), which provides that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . .

FED. R. CIV. P. 10(b).

However, the Second Circuit has made clear that, "where the absence of numbering or succinct paragraphs does not interfere with one's ability to understand the claims or otherwise prejudice the adverse party, the pleading should be accepted." *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005). The Second Circuit is especially "willing to overlook harmless violations of Rule 10(b)." *Id.* And "even where a violation of Rule 10(b) is not harmless, dismissal is not typically the appropriate course of action." *Id.*

As previously noted, the second amended complaint comprises nearly 200 numbered paragraphs.  *See generally* Second Am. Compl.  While some paragraphs are certainly not "limited as far as practicable," *cf.* FED. R. CIV. P. 10(b), this defect is largely formalistic, rather than substantive, and ultimately harmless for substantially the same reasons set forth *supra* with respect to defendants' arguments about Rule 8.

Accordingly, the Court denies the Fraternity defendants' motion to dismiss the second amended complaint for noncompliance with Rule 10(b).

### 2.  Claims Premised on Alter Ego Liability

The Fraternity defendants urge the Court to dismiss (1) plaintiff's claims against the Foundation, all of which are premised on alter ego liability, Defs.' Mem. at 16–18; and (2) plaintiff's negligence and negligent breach of assumed duty claims against Comstock, both of which are similarly premised on alter ego liability.  *Id.* at 18–19.

The Fraternity defendants argue that plaintiff's allegations in support of those claims are conclusory and therefore insufficient to state a plausible claim for relief.  Defs.' Mem. at 16–19.

Plaintiff opposes, insisting that her newly alleged facts create a plausible inference that the Foundation and Comstock are alter egos of Sigma Chi and, as such, may be held liable.  Second Am. Compl. ¶¶ 21–22, 107–113.

### a.  Applicable Law

The Court has subject matter jurisdiction over this action based on complete diversity of citizenship, *see* 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000 and the parties are citizens of different states.  Second Am. Compl. ¶ 15.

"The responsibility of the federal courts in a diversity action is to determine and apply the law of the state in which the federal trial court sits."  *Marina Mgmt. Corp. v. Brewer*, 572 F.2d

43, 45 (2d Cir. 1978) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)); *see also Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." (citing *Tompkins*, 304 U.S. at 78)).

As relevant here, "[t]he federal common law tends to 'give[ ] less deference to the corporate form than does the strict alter ego doctrine of state law.'" *Doheny v. Int'l Bus. Machines, Corp.*, 714 F. Supp. 3d 342, 374 (S.D.N.Y. 2024) (quoting *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1220 (2d Cir. 1987) (applying New York law)).

**b.  Alter Ego liability under New York law**

New York law "permits the incorporation of a business for the very purpose of enabling its proprietors to escape personal liability . . ., but, manifestly, the privilege is not without its limits." *Walkovszky v. Carlton*, 223 N.E.2d 6, 7 (N.Y. 1966) (citing *Bartle v. Home Owners Co-op.*, 127 N.E.2d 832, 833 (N.Y. 1955)). "Broadly speaking, the courts will disregard the corporate form, or, to use accepted terminology, 'pierce the corporate veil', whenever necessary 'to prevent fraud or to achieve equity.'" *Walkovszky*, 223 N.E.2d at 7 (quoting *Int'l Aircraft Trading Co. v. Mfrs. Tr. Co.*, 79 N.E.2d 249, 252 (1948)).

"Properly understood, 'an attempt . . . to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners.'" *Cortlandt St. Recovery Corp. v. Bonderman*, 96 N.E.3d 191, 203 (N.Y. 2018) (quoting *Morris v. N.Y. State Dep't of Tax'n & Fin.*, 623 N.E.2d 1157, 1160 (N.Y. 1993)).

"Because a decision whether to pierce the corporate veil in a given instance will necessarily depend on the attendant facts and equities . . . New York cases may not be reduced to

definitive rules governing the varying circumstances when the power may be exercised."
*Morris*, 623 N.E.2d at 1160.  "Generally, however, piercing the corporate veil requires a showing
that: (1) the owners exercised complete domination of the corporation in respect to the
transaction attacked; and (2) that such domination was used to commit a fraud or wrong against
the plaintiff which resulted in plaintiff's injury."  *Id.* at 1160–61.

In other words, "[t]he party seeking to pierce the corporate veil must establish that the
owners, through their domination, abused the privilege of doing business in the corporate form to
perpetrate a wrong or injustice against that party such that a court in equity will intervene."
*Morris*, 623 N.E.2d at 1161.

"Additionally, 'the corporate veil will be pierced to achieve equity, even absent fraud,
[w]hen a corporation has been so dominated by . . . another corporation and its separate entity so
ignored that it primarily transacts the dominator's business instead of its own and can be called
the other's alter ego.'"  *Williams v. Lovell Safety Mgmt. Co., LLC*, 71 A.D.3d 671, 672 (N.Y.
App. Div. 2d Dep't 2010) (quoting *Island Seafood Co. v. Golub Corp.,* 303 A.D.2d 892, 893
(N.Y. App. Div. 3d Dep't 2003)).  Thus, as New York courts have consistently held:

> In determining whether to pierce the corporate veil, "[g]enerally considered are
> such factors as whether there is an overlap in ownership, officers, directors and
> personnel, inadequate capitalization, a commingling of assets, or an absence of
> separate paraphernalia that are part of the corporate form, such that one of the
> corporations is a mere instrumentality, agent and alter ego of the other."

*Midson v. Meeting House Lane Med. Prac., P.C.*, 230 A.D.3d 673, 678 (N.Y. App. Div. 2d Dep't
2024) (quoting *Island Seafood Co.,* 303 A.D.2d at 893–94).

Typically, however, "a fact-laden claim to pierce the corporate veil is unsuited for
resolution on a pre-answer, pre-discovery motion to dismiss."  *Cortlandt St. Recovery Corp.*, 96
N.E.3d at 203.

### i.  The Foundation & Sigma Chi

Because the nature and extent of the Fraternity defendants' relationships vary, the Court addresses them in turn.

First, the Fraternity defendants contend that plaintiff's new allegations do not render her claim that the Foundation is an alter ego of Sigma Chi any more plausible.  Defs.' Mem. at 17–18.

With respect to the Foundation and Sigma Chi, plaintiff alleges that:

(1) the Foundation's sole purpose is "'to secure financial resources and provide faithful stewardship in support of Sigma Chi," Second Am. Compl. ¶ 21;

(2) the Foundation "accepts and holds tax-deductible contributions and substantial assets used to fund, support, and expand the activities and operations of Defendant Sigma Chi and its chapters," *id.*;

(3) the Foundation reimburses and/or subsidizes the wages and salaries of directors and officers of Sigma Chi, *id.*;

(4) Sigma Chi and the Foundation share a headquarters and "regularly have overlapping officers, directors, and/or key employees, with at least nine individuals having served as officers, directors, or key employees of both Sigma Chi and the Foundation since 2000," *id.*;

(5) since 2000 . . .  at least $26.2 million in funds have been transferred between the entities, *id.*;

(6) the Foundation, at Sigma Chi's direction, issued a mortgage to Comstock, with the Chapter House as security, conditioned on terms that require Comstock to (1) operate and manage the Chapter House for Sigma Chi's benefit while Psi Psi remains an active chapter in good standing; and (2) give control of the Chapter House to a committee comprised of majority Sigma Chi members or officers in the event that Sigma Chi deems Psi Psi to be no longer in good standing , *id.* ¶¶ 109–113; and

(7) both Sigma Chi and the Foundation hold a limited partnership in RMF, which Sigma Chi formed in 1988 and "provides a vehicle to shield the assets of Sigma Chi and its chapters and housing corporations from, *inter alia*, creditors with claims arising from sexual assaults, personal injuries, and deaths that occur as a result of non-existent or ineffective risk management programs on the local level," *id.* ¶¶ 116–119.

"When a corporation has been so dominated by an individual or another corporation and its separate entity so ignored that it primarily transacts the dominator's business instead of its own and can be called the other's alter ego, the corporate form may be disregarded to achieve an equitable result." *Austin Powder Co. v. McCullough*, 216 A.D.2d 825, 827 (N.Y. App. Div. 3d Dep't 1995); *see also Villnave Constr. Servs., Inc. v. Crossgates Mall Gen. Co. Newco, LLC*, 201 A.D.3d 1183 (N.Y. App. Div. 3d Dep't 2022) (finding allegations that one defendant was (1) owned and controlled by other defendants, and (2) intentionally undercapitalized by those defendants, sufficient to support an alter ego theory of liability at the pre-answer motion to dismiss stage.); *cf. Stedman Energy, Inc. v. Lenape Res. Corp.*, 175 A.D.2d 646, 646 (N.Y. App. Div. 4th Dep't 1991) (declining to pierce first corporation's corporate veil to impose liability on second corporation where there was no proof that first corporation "was a mere department, division or alter ego" of second corporation or was otherwise undercapitalized).

In *Austin Powder Co.*, the court found that two entities were operated as one where the entities maintained a shared headquarters, there was evidence of commingled assets, and one entity funded the other's payroll. *Austin Powder Co.*, 216 A.D.2d 825 at 826–27.

The Fraternity defendants maintain that (1) the overlap of just nine employees is insufficient to render the Foundation an alter ego of Sigma Chi; and (2) plaintiff's conclusory assertion that "certain undescribed funds have been transferred between the two entities" is likewise inadequate to state a claim for relief against the Foundation premised on alter ego liability. Defs.' Mem. at 17–18.

However, plaintiff's allegations go far beyond that. As noted *supra*, Plaintiff alleges that the Foundation and Sigma Chi operate out of the same headquarters. Second Am. Compl. ¶ 21. Plaintiff also alleges that the Foundation holds substantial assets used to fund Sigma Chi's

activities and pay Sigma Chi's employees. *Id.* Plaintiff alleges that the Foundation, under Sigma Chi's direction, obtained a mortgage interest in the Chapter House by issuing a loan to Comstock in or around January 1984. *Id.* ¶¶ 109–113. Plaintiff alleges that Sigma Chi and the Foundation maintain a partnership interest in RMF, which was allegedly established to shield Sigma Chi, Psi Psi, and Comstock from claims arising out of hazing incidents and violations of university and fraternity risk-management policies. *Id.* ¶¶ 123–125. Collectively and taken as true, these allegations permit a reasonable inference that the Foundation "primarily transacts [ ] [Sigma Chi]'s business instead of its own." *Austin Powder Co.*, 216 A.D.2d 825 at 827.

Defendants counter-arguments, which rely on largely inapplicable precedent, do not compel a different conclusion. In their opening memorandum, defendants cite *Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Tr.*, 2007 WL 951565 (N.D.N.Y. Mar. 27, 2007) for the proposition that plaintiff "must allege the Foundation had 'no functioning independent officers and directors.'" Defs.' Mem. at 17. In that case, however, the court applied Pennsylvania law. *Consol. Risk Servs.*, 2007 WL 951565 at *5.[7] New York law controls here.

In their reply, defendants urge the Court to accept the noncontrolling rule of yet another state, this time California, in support of their motion to dismiss plaintiff's claims against the Foundation. *See* Dkt. No. 103, Defs.' Reply at 11 (citing *Aaron Richard Golub, Esquire, P.C. v. Blum*, 2024 WL 1376436 (S.D.N.Y. Apr. 1, 2024)). However, as already discussed, New York law applies here, and, regardless, plaintiff's allegations go well beyond the single conclusory allegation at issue in *Aaron Richard Golub, Esquire, P.C.*

---

[7] Further, and contrary to defendants' contention, Chief Judge Sannes's decision on their earlier motion to dismiss did not cite that case for the Pennsylvania rule to which defendants now point. *See* Dkt. No. 73 at 32 (citing *Consol. Risk Servs., Inc.* only for the proposition that "purely conclusory allegations of alter-ego status will not survive a motion to dismiss.")

In sum, the second amended complaint plausibly alleges that Sigma Chi has utilized the Foundation to hold and protect assets from claimants like plaintiff, thereby making it plausible that the Foundation is an alter ego of Sigma Chi.  Accordingly, plaintiff's claims against Sigma Chi for negligent breach of assumed duty, negligence *per se*, and negligence based on vicarious liability may proceed against the Foundation under a theory of alter ego liability, and defendants' motion to dismiss must be denied as to these counts.

### ii. Comstock & Sigma Chi

The Fraternity defendants also argue that the second amended complaint fails to plausibly allege that Comstock is an alter ego of Sigma Chi.  Defs.' Mem. at 18–19.

With respect to the relationship between Comstock and Sigma Chi, plaintiff alleges that:

(1) "Sigma Chi has authority to establish entities (house corporations) to take title to and hold real property (fraternity houses)," Second Am. Compl. ¶ 102;

(2) "[I]nsurance policies negotiated by [Sigma Chi] . . . provide[] a vehicle to shield the assets of Sigma Chi and its chapters and housing corporations from, *inter alia*, creditors with claims arising from sexual assaults . . . that occur as a result of non-existent or ineffective risk management, *id.* ¶ 119;

(3) Comstock "holds title to and manages Sigma Chi's chapter house . . . subject to certain provisions in the Constitution of Sigma Chi Fraternity, which are binding on Defendant Comstock as to the chapter house," *id.* ¶ 105;

(4) Comstock's "sole purposes are to hold title to and manage the real estate exclusively used by the Fraternity Defendants . . . to generate new members and revenues," *id.* ¶ 22;

(5) Sigma Chi directed the Foundation to issue financing to Comstock under the condition that Comstock was "obligated . . . to 'hold, operate and manage' the chapter house 'for the protection and best interests of the active and alumni members of Psi Psi chapter and for the best interests of the Sigma Chi Fraternity,'" *id.* ¶ 109; and

(6) per the 1984 Declaration of Trust between Comstock and the Foundation, Comstock "was obligated to deal with or manage the chapter house in accordance with directions given by any two members of a 'Property Committee' comprised of . . . at least two . . . officers or members of Sigma Chi," in the event that Sigma Chi declared Psi Psi to be a chapter no longer in good standing, *id.* ¶¶ 110–113.

Plaintiff's claims arise, in part, out of the allegedly negligent management of the Chapter House. Second Am. Compl. ¶¶ 151. It can be reasonably inferred from the second amended complaint that Sigma Chi dominates Comstock with respect to the management of the Chapter House, because (1) Comstock must manage and operate the Chapter House for the best interests of Sigma Chi so long as Psi Psi remains in good standing; (2) only Sigma Chi can deem Psi Psi a chapter no longer in good standing; and, (3) in that case, Comstock cannot independently control the disposition of the Chapter House. *Id.* ¶¶ 109–113. Plaintiff also alleges that Sigma Chi negotiates insurance policies to shield assets held by Comstock, including the Chapter House, from claims like those at issue here. *Id.* ¶ 119.

In sum, plaintiff has plausibly alleged that Comstock holds, manages, and operates the Chapter House as a mere "department, division or alter ego" of Sigma Chi, and further that Sigma Chi attempts to shield Comstock's assets from liability for negligence claims like those at issue here.

Accordingly, the Fraternity defendants' motion is also denied with respect to Comstock, and plaintiff's claims for negligence, based on vicarious liability, and negligent breach of assumed duty may proceed against Comstock.

### 3. Willful and Wanton Misconduct

Lastly, the Court evaluates the Fraternity defendants' motion as it relates to plaintiff's allegations of willful and wanton misconduct.

The Fraternity defendants urge the Court to dismiss this claim. Defs.' Mem. at 19–20. As defendants correctly note, New York does not recognize a cause of action for "willful and wanton misconduct." Defs.' Mem. at 19–20; *see Rocanova v. Equitable Life Assur. Soc. of U.S.*, 634 N.E.2d 940, 945 (N.Y. 1994) ("[T]here is not the slightest indication in that decision that a

pattern of misconduct aimed at the public can, without more, constitute an independent basis for a punitive damages award."). Thus, insofar as the second amended complaint attempts to assert a standalone cause of action for willful and wanton misconduct, that claim must be dismissed.

In opposition, plaintiff clarifies that her "willful and wanton misconduct allegations pertain to her request for punitive damages on her negligence and negligence *per se* claims." Pl.'s Opp. at 21–22.

However, the Fraternity defendants maintain that, "[i]n any event, [p]laintiff's request for punitive damages should be dismissed," because plaintiff "does not allege conduct rising to the level of willful and wanton misconduct." Defs.' Reply at 13.

"The nature of the conduct which justifies an award of punitive damages has been variously described, but, essentially, it is conduct having a high degree of moral culpability which manifests a 'conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'" *Home Ins. Co. v. Am. Home Prods. Corp.*, 550 N.E.2d 930, 934 (N.Y. 1990) (quoting *Welch v. Mr. Christmas Inc.*, 440 N.E.2d 1317, 1321 (N.Y. 1982)) (internal citation omitted). "Such conduct need not be intentionally harmful but may consist of actions which constitute willful or wanton negligence or recklessness." *Home Ins. Co.*, 550 N.E.2d at 934.

The second amended complaint identifies several reported instances of "misuse and unlawful provision of alcohol in the fraternity house and at fraternity events, sexual assault, and other dangerous misconduct" at Psi Psi and other Sigma Chi chapters across the country between 1983 and 2018. Second Am. Compl. ¶¶ 73–74. Plaintiff also alleges that the National Interfraternity Council, which is comprised of "66 Greek national organizations with 5500 chapters on 800 campuses throughout the United States and Canada," passed a resolution in 1997

- 26 -

that prompted some fraternities, but not Sigma Chi, to implement reforms aimed at mitigating injuries associated with the pervasive "improper fraternity oversight of alcohol use." *Id.* ¶ 44. Plaintiff further contends that such reforms drastically reduced the frequency and severity of reported injuries in the years that followed. *Id.*

Reports of misconduct that predate plaintiff's sexual assault support a reasonable inference that the Fraternity defendants were aware of the risk of harm to plaintiff. Reports of subsequent misconduct, coupled with plaintiff's allegations that other fraternities undertook successful reform efforts, support a reasonable inference that the Fraternity defendants willfully, or at least recklessly, failed to adopt similar reforms.

Ordinarily, "[u]nder New York law, the imposition of punitive damages is left to the sound discretion of the finder of fact." *Mar Oil, S.A. v. Morrissey*, 982 F.2d 830, 844 (2d Cir. 1993).

At this early stage, without any discovery, the Court declines to hold that plaintiff is not entitled to punitive damages as a matter of law, particularly as she has plausibly alleged that the Fraternity defendants may have engaged in willful and/or wanton misconduct.

## V.    CONCLUSION

The Fraternity defendants have not waived any of the arguments raised in their motion to dismiss the second amended complaint. Nevertheless, their motion must be denied because (1) plaintiff's second amended complaint satisfies the pleading requirements of Rules 8 and 10; (2) plaintiff has plausibly alleged that the Foundation, and Comstock are alter egos of Sigma Chi; and (3) plaintiff has plausibly alleged that she is entitled punitive damages based on the Fraternity defendants' willful and wanton misconduct. The Fraternity defendants are directed to answer the second amended complaint within 14 days of this order.

Therefore, it is

ORDERED that

1. The Fraternity defendants' motion (Dkt. No. 78) is DENIED;

2. The Fraternity defendants are directed to file an answer to the second amended complaint (Dkt. No. 77) within 14 days of the filing of this order.

The Clerk of the Court is directed to terminate the pending motion (Dkt. No. 78) and set a deadline accordingly.

**IT IS SO ORDERED.**

Anthony J. Brindisi
U.S. District Judge

Dated: August 4, 2025
      Utica, New York.